# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

---

John J. Jones, M. D., John F. Power, Horatio T. Lavender, Edmund W. Hetherington, John O. Smith, William August Haegele and Calvin A. Brown, Appellants, *v.* Frederick B. Vogel, Jacob Boon, William Albert Johnson and Real Estate, Title Insurance and Trust Company.

*Mortgage—Release—Principal and agent.*

Where the holder of a purchase money mortgage which covers a large number of building lots agrees to release the several lots as they are sold, upon the payment to him of the purchase price of the lots, and the relation of principal and agent does not exist between the mortgagor and mortgagee, the purchasers of the several lots cannot compel the mortgagee to release their lots upon the payment of the money to the mortgagor unless it can be shown that the purchase money was paid over by the mortgagor to the mortgagee.

Where a mortgagor who is in default in his payments agrees to pay the mortgagee weekly all purchase money thereafter received from lots then sold or thereafter to be sold, and to give him access to the books relating thereto, and the mortgagee, in consideration thereof, agrees to release the lots as they are sold, upon receiving the full consideration money obtained for them, this does not make the mortgagor the agent of the mortgagee so as to compel the latter to release lots, the purchase money of which has been paid by the purchasers to the mortgagor, but which has not been paid by him to the mortgagee.

Argued Feb. 11, 1898. Appeal, No. 9, Jan. T., 1898, by

plaintiffs, from decree of C. P. Delaware Co., March T., 1896, No. 5, on bill in equity.   Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Bill in equity to compel the execution of releases of the lien of a mortgage.

The bill alleged in the first paragraph, the conveyance of a tract of land of about eighty-five acres in Upper Darby, Del. Co., by William Albert Johnson and wife to Jacob Boon on July 9, 1889.   In the second paragraph a statement of the purchase money mortgage of $117,000 was made.   In the third paragraph it was alleged that Jacob Boon and wife had conveyed the premises subject to said mortgage and certain trusts to the Real Estate, Title Insurance and Trust Company of Philadelphia.   In the fourth paragraph it was alleged that the trust company had executed a declaration of trust in which it was declared that the " title to the said tract of land vested in the said company shall be held by them so far as concerns the said Jacob Boon and all other persons until otherwise conveyed as personalty and not realty " to convey as Frederick B. Vogel, attorney for Lansdowne Heights, shall direct, and divide the net profits between Vogel and Boon.   In the fifth paragraph it was alleged that the tract had been laid out in lots, a plan recorded, entitled " Plan of Lansdowne Heights, No. 2," upon which lots are laid out and numbered from 950 to 1720.

The facts appear by the opinion of the court below, CLAYTON, P. J., which was as follows:

The facts stated in paragraphs 1, 2, 3, 4 and 5 of the plaintiffs' bill are found to be true as therein stated.

Sales were made from time to time of lots mentioned in said plan by Frederick B. Vogel, who signed himself as attorney for the Lansdowne Estate.   The firm called the Lansdowne Estate consisted of Jacob Boon and the said F. B. Vogel, who were the only persons interested in said firm.   The profits were to be equally divided between said Boon and Vogel.   The said William A. Johnson had no beneficial interest in said firm or the lands conveyed to Boon, except as mortgagee.   Vogel had the entire management of said land and acted only for himself, and as attorney in fact for Boon, the legal owner, subject to the mortgage to Johnson.   By a written agreement signed by Johnson, dated June 11, 1889, two days after the date of the deeds

from Johnson to Boon, Johnson agreed to release from the lien of said mortgage debt all lots as laid out and sold, upon receiving the full consideration money obtained for said lots, said consideration to be not less than $2,500 per acre for lots on Darby road and Owens avenue, and $1,750 per acre for the balance, or at that rate. The said Vogel, acting for himself and Boon, proceeded to sell lots and received the consideration, under an agreement in writing, of which exhibit " A," hereto annexed, is a copy. Under this agreement the plaintiffs in this bill purchased the several lots mentioned in the said bill of complaint. Johnson was not a party to, or known to any of the plaintiffs when said lots were bought. His name was not mentioned in any way when the agreement to purchase said lots was signed or afterwards. Under the agreement marked exhibit " A," the said Jones to acquire title to lots Nos. 1407, 1408, 1410

| | | |
|---|---|---|
| and 1411, was required to pay . . . . | | $1,800 |
| On lot 1455, . . . . . . . | | 250 |
| | | $2,050 |
| He paid on this to Vogel prior to December 5, 1892, . . . . . | $1,160 | |
| He paid on this to Vogel after December 5, 1892, . . . . . . | 375—$1,535 | |
| Leaving due to Vogel, . . . . | | $ 515 |

Of the $1,535 received by Vogel he paid to William Albert Johnson after December 5, 1892, $300, and nothing before that date, leaving of the $375, so received after December 5, 1892, $75.00 unaccounted for.

2. On June 26, A. D. 1890, the plaintiffs, Horatio Lavender and Edmund W. Hetherington, entered into an agreement with the defendant, Frederick B. Vogel, attorney for the Lansdowne Heights Estate, similar in form to exhibit " A," for the purchase of certain lots designated on said plan as Nos. 1563, 1564 and 1565. Under this agreement the said Lavender and Hetherington, to acquire title to the said lots were re-

| | | |
|---|---|---|
| quired to pay . . . . . . . . | | $975 |
| They paid on this to Vogel prior to December 5, 1892, . . . . . | $585 | |
| They paid after December 5, 1892, . . | 195—$780 | |
| Leaving due to Vogel, . . . . . | | $195 |

Of the $780, received by Vogel, he paid to William Albert Johnson after December 5, 1892, $90.00 and nothing before that date. Of this $195, received after December 5, 1892, Johnson received only $90.00.

3. On October 1, 1889, the plaintiff, Calvin A. Brown, entered into an agreement with the defendant, Frederick B. Vogel, attorney for the Lansdowne estate, similar in form to exhibit "A," for the purchase of a lot designated on said plan as Nos. 1368 and 1369. Under this agreement the said Calvin A. Brown,

to acquire title to said lots, was required to pay    .    $650

He paid on this to Vogel prior to December 5,
1892,    .    .    .    .    .    .    .    $470

He paid on this to Vogel after December 5,
1892,    .    .    .    .    .    .    .    180—$650

Of the $470, received by Vogel prior to December 5, 1892, he paid nothing to Johnson, and of the $180, received after that date, he paid Johnson $135. Prior to December 5, 1892, the plaintiff, William August Haegele entered into an agreement with defendant, Frederick B. Vogel, as attorney for the Lansdowne estate, similar in form to Exhibit "A," for the purchase of a lot designated on said plan as No. 1257. Under this agreement the said Haegele was required to pay to Vogel, in order to acquire title,    .    .    .    .    .    .    $325

He paid on this prior to December 5, 1892,   .   $250
"    "    "    "   after     "    "    "     75—$325

Of the $250, received by Vogel prior to December 5, 1892, Johnson received nothing, and of the $75.00, received by Vogel after December 5, 1892, he paid Johnson $30.00.

Prior to December 5, 1892, plaintiff, John O. Smith, entered into an agreement with defendant, Frederick B. Vogel, as attorney in fact for the Lansdowne estate, similar in form to exhibit "A," for the purchase of four lots designated on said plan as Nos. 1200, 1201, 1566 and 1567. Under this agreement, said Smith was required to pay to Vogel, in order to acquire title,    .    .    .    .    .    .    $1,300

He paid on this prior to December 5, 1892,   $715
"    "    "    "   after     "    "    "     585—$1,300

Of the $715, received by Vogel prior to December 5, 1892, Johnson received nothing, and of the $585, received by Vogel after December 5, 1892, he paid Johnson $300.

On October 4, 1894, plaintiff, John F. Power, entered into an agreement with Frederick B. Vogel as attorney for the Lansdowne estate, similar in form to exhibit "A," for

the purchase of lots Nos. 1641 and 1642, for . . $815
Of this he claims to have paid . . . . 320
                                                    ‾‾‾‾‾
                                                    $495

Johnson has been paid upon the said mortgage debt the sum of $51,569.50, and has released lots (valued at the sale price) to the amount of $48,569.50. The mortgagor being in default, the mortgage has been foreclosed, and after the sale of the balance of the land exclusive of the lots mentioned in this bill, there is still due to Johnson the sum of $55,679.39.

The sheriff's sale was on February 29, 1896. The only connection the Real Estate Title Insurance & Trust Co. have with the case will sufficiently appear by a declaration of trust, a copy of which is hereto annexed, marked exhibit "B." This declaration of trust recognizes the said Vogel as the attorney in fact for Boon. Vogel at once commenced the sale of said lots under the form of an agreement, of which exhibit "A" is a copy. Johnson carried out his agreement and released all lots sold by Vogel for which he was paid the full sale price, and for quite a large number he released without receiving the sale price. The releases he signed without receiving the price were signed wholly upon the request of Vogel, and on his personal promise to pay over the said price.

Payments on the mortgage being in default, Johnson threatened a foreclosure, whereupon an agreement was made, dated December 5, 1892, of which the paper annexed marked exhibit "C" is a copy. Johnson carried out his part of this last agreement. Vogel becoming again in default, Johnson proceeded to foreclose his mortgage. None of the plaintiffs had any knowledge or notice of the agreement of December 5, 1892, nor of any agreement for the release of the lots they were buying other than the record notice of the first agreement. No tender had been made of any amount admitted to be due. While Johnson does not recognize the right of the complainants to demand a release from him, he has expressed his willingness to execute such releases upon being paid the full amount of each purchase, less what he has received from Vogel.

## CONCLUSIONS OF LAW.

The above are all the material facts in the case. But two questions are raised: First, have the plaintiffs a legal or equitable right to require Johnson to execute releases for the lots so purchased by them without paying him the full consideration money, less what he has already received from Vogel?

Second. Are the plaintiffs entitled to credit on the purchase money of their lots, for the money paid by them to and embezzled by Vogel?

It may be admitted that the plaintiffs have an equitable right to have credit for all the money they have paid Vogel and which he has paid over to Johnson. This, as I understand Mr. Johnson, he has always been willing to do. This is all, therefore, that need be said upon the first question.

The second question is the important one and its answer must depend entirely upon the written evidence, as there is no parol testimony upon the subject. Unless, therefore, the agreement of December 5, 1892, standing alone, can be construed as creating an agency, in which Johnson is the principal and Vogel his agent to receive the purchase money from the purchasers of such lots as Vogel should thereafter sell, or had theretofore sold, the plaintiffs must fail.

We are of opinion that no sufficient evidence has been produced to warrant the court in finding that Vogel was the agent of Johnson for any purpose. There is no privity, either contract or estate, sufficient to raise such a presumption. We are also of opinion in the present condition of the case that Johnson cannot enforce any of the contracts made by Vogel or compel any of the plaintiffs to pay the balance admitted by them to be due to Vogel and Boon on account of their purchase of said lots. It will, therefore, be useless for the court to make a decree which it cannot enforce. The plaintiffs are before the court as terre-tenants and not as contracting parties. If we were to require Johnson to execute the releases demanded on receiving the balances admitted to be due him, we could not make a binding decree that would require the complainants to pay said balances unless we find Vogel to be Johnson's agent. As we find no such agency, it follows that Johnson cannot recover the balances unpaid on a contract made with Vogel.

The complainants can demand releases upon tendering the

balance actually due, but, if we were to require Johnson to execute such releases, the complainants could decline to tender him the money. The contest is therefore not equal. They must be bound by our decree if he is. In the present condition of the real estate market, those who have made but small payments would not show great wisdom in tendering Johnson the balance of their purchase money.

If, however, the complainants or any of them will pay into court within ten days from the filing of this decree the full amount of their purchases, less what Vogel has actually paid over under the agreement of December 5, 1892, with interest thereon from the time the whole balance was due, then we will order and decree that Johnson shall execute the releases prayed for, and we will permit him to take out the money, and we will make an order on the trust company to execute the deed. On failure to pay said money into court within the time above limited, let the bill be dismissed with costs. In any event the costs are ordered to be paid by the complainants.

### EXHIBIT " A."

" This agreement, made the 21st day of June, Anno Domini, 1890, between Frederick B. Vogel, attorney for Lansdowne Estate, party of the first part, and John J. Jones, party of the second part witnesseth as follows :—The party of the second part hereby bids the sum of eighteen hundred dollars for lots Nos. 1407, 1408, 1409, 1410 and 1411, on the recorded plan of Lansdowne Heights, situate at Lansdowne Heights, in Upper Darby township, Delaware county, Pennsylvania, which bid, the party of the first part hereby accepts. The party of the second part agrees to deposit with the party of the first part on account of the said bid the sum of          dollars upon the signing of this agreement, the payment of which is noted in the receipt book issued to the party of the second part, and also to deposit with the party of the first part at his office, No. 225 South Sixth street, Philadelphia, or otherwise, as designated by him for the purpose, the sum of not less than          dollars on the          day of each and every month until the entire amount of the said bid has been fully paid, and after the entire amount of the said bid shall have been paid as aforesaid, the same shall be appropriated by the party of the first part in pay-

ment of the consideration money of the said lot or lots of ground which the party of the first part thereupon agrees to sell, and by a proper deed of special warranty to have vested in the party of the second part the said ground, accompanied by a policy of the Real Estate Title Insurance and Trust Company, of Philadelphia, or any other company selected by the party of the first part . . . .

"Nothing herein contained, or otherwise howsoever existing shall establish or vest in the party of the second part or any person or persons claiming or to claim under him or her, any interest, right of possession or other right, legal or equitable, in the said ground until after a deed shall have been executed and delivered therefor, nor to render the party of the first part personally liable in any event as principal. When more than one payment shall happen to be in arrear any payment or payments on account accepted by the party of the first part shall be credited by him to the payment longest in arrear. If default shall at any time be made by the party of the second part in making any one or more of the said monthly payments on account of the said bid, then, and in such case, the party of the first part may, at any time, at his option, and without notice to the party of the second part, sell the said ground at public or private sale, either or both, for such price or prices and on such terms as he can obtain therefor; and upon such sale being made, the party of the first part may, without notice as aforesaid, make, execute and deliver to the purchaser thereof proper assurances in the law to vest in such purchaser the said ground, subject to the said building restriction in the same manner and with the same effect to all intents and purposes as if this present agreement had not been made. And immediately on such default all moneys deposited by the party of the second part on account of the said bid, shall, without notice to the party of the second part, become the sole and exclusive property of the party of the first part, as liquidated damages for the failure of the party of the second part to comply with the terms of the said bid, any law, custom or usage to the contrary notwithstanding. . . . . The party of the first part shall have the right at any and all times to use all moneys deposited with him or with any other person or persons designated by him to receive the same under the terms of this agreement without the consent of the party of the second part.

" In witness whereof, the parties hereto have hereunto interchangeably set their hands the day and year first above written.

" Signed and delivered          FREDERICK B. VOGEL,
   in the presence of:          Atty. for Lansdowne Estate.

" JOHN J. JONES."

EXHIBIT "B."

" Whereas, by indenture bearing even date herewith and intended to be forthwith recorded, the said Jacob Boon and Lizzie F. his wife, conveyed to the Real Estate, Title Insurance and Trust Company of Philadelphia aforesaid, in fee, the tract of land therein described upon the trusts specified in this present deed poll; and whereas, the said tract of land has been subdivided and laid out into building sites and avenues, as indicated on the plan thereof, (designated as plan No. 2,) a copy of which is intended to be filed of record in the proper office at Media, Delaware county aforesaid.

" Now these presents witness, that the parties hereto, declare that the trusts referred to in the above recited indenture are as follows : (1) That the title to the said tract of land vested in the said company shall be held by them so far as concerns the said Jacob Boon and all other persons until otherwise conveyed, as personalty and not as realty. (2) The said company shall grant and convey the whole or any part of the said tract of land to such persons for such estates, and generally in such manner as Frederick B. Vogel, as attorney for the said Jacob Boon, or otherwise, shall from time to time direct. And shall on the request of the said Frederick B. Vogel execute and deliver all necessary and proper instruments of writing by specialty or otherwise, and generally perform all such acts, matters and things as shall be deemed by the said company and the said Frederick B. Vogel proper and expedient, without in any event persons dealing with the said trustees and attorney being obliged to inquire into the propriety of anything done or ordered by either of them, or to see to the application of the purchase money.

" And it is hereby declared, to be the object of the said trust to enable the conveyance in absolute fee simple to all persons who shall have fully complied with all the terms of instruments in writing concerning the said ' Lansdowne Heights ' or any part thereof; to enable the said Frederick B. Vogel, attorney

for the said Jacob Boon, or otherwise, to pay and discharge all incumbrances and indebtedness, however arising, concerning the said 'Lansdowne Heights,' and all expenses incident thereto, including compensation to the said company for acting as trustee hereunder, and for issuing proper policies of title insurance; to enable the said Frederick B. Vogel in compensation for these services already rendered by him, to retain and receive from time to time fifty per cent. of the net profits realized from the handling of the whole or any part of 'Lansdowne Heights' and to enable the said Jacob Boon, his executors and administrators to receive the remaining fifty per cent. of the net profits as aforesaid.

" And it is hereby also declared that nothing herein contained or otherwise howsoever existing shall render the said company liable for anything not actually done by themselves, nor create any trust, equity or other right in favor of any person or persons whomsoever, whose name or names are not mentioned in the operative part of this deed poll."

EXHIBIT "C."

" This agreement, made this fifth day of December, A. D. 1892, between Jacob Boon and Frederick B. Vogel, the said Jacob Boon acting herein by his duly constituted attorney in fact, the said Frederick B. Vogel, of the first part, and Wm. Albert Johnson of the second part, witnesseth as follows: (1) Party of the first part agrees to pay weekly to the party of the second part all moneys hereafter received from lots now sold and hereafter to be sold in tract No. 2, of Lansdowne Heights. (2) Party of the first part agrees that the party of the second part shall at all times have full access to all books relating to the said tract No. 2. (3) Party of the first part agrees that The Real Estate, Title Insurance and Trust Company shall pay to the party of the second part all moneys received by the said company from tract No. 1, of Lansdowne Heights after the claims of the said company thereon have been fully satisfied. (4) Frederick B. Vogel as trustee for Brighton Heights by virtue of the authority given him by indorsement hereon agrees to pay to the party of the second part one half of all current receipts hereafter coming to his hands from lots. in Brighton Heights, New Jersey, now sold and hereafter to be sold, and that the books relating thereto shall at all times be.

open to the inspection of the party of the second part. (5) The party of the second part agrees forthwith to release to The Real Estate, Title Insurance and Trust Company, trustees, from the lien and operation of the mortgage held by him all lots in tract No. 2, Lansdowne Heights, now sold and paid for in full, and all lots in the said tract now sold, but not paid for in full, when the same have been fully paid for, saving and excepting lots Nos. 1283 and 1284, which, however, he will release as soon as the purchaser thereof or any other party shall purchase at the same price as said two were sold for, and make substantial payment on the three adjoining lots. The lots already sold and paid for in full, other than the two above mentioned, being Nos. 969, 970, 971, 972, 973, 974, 1003, 1004, 1058, 1059, 1020, 1023, 1024, 1027, 1103, 1104, 1108, 1109, 1112, 1186, 1187, 1214, 1262, 1271, 1417, 1473 and 1713. (6) That when any purchaser of a lot hereafter sold shall have paid in all ninety-five per cent. of the purchase money thereof, and all such payments shall have been paid over to the said party of the second part as herein provided, the party of the second part will upon payment of the remaining five per cent. by the purchaser to the party of the first part release such lot from the lien of the said mortgage. (7) It is mutually agreed that as soon as the party of the second part shall have received under this agreement or otherwise from the party of the first part an amount of money equal to that which, up to such time, he would have received according to the original agreement made in 1889, with the said Jacob Boon, one of the parties of the first part hereto, then this agreement shall be canceled and destroyed and the policy of insurance on the life of the said Frederick B. Vogel for ten thousand dollars issued by the Penn Mutual Life Insurance Company now held by the party of the second part shall be returned to the beneficiary therein named. (8) This agreement shall be binding on and available to the heirs, executors and administrators of the several parties hereto.

" In witness whereof, the parties hereto have hereunto set their hands and seals the day and year first herein above written.

" (Signed)        JACOB BOON, by his attorney in fact,
                        FREDERICK B. VOGEL,
            " FREDK. B. VOGEL,
            " JACOB BOON,
            " WM. ALBERT JOHNSON."

*Error assigned* was decree of the court.

*E. H. Hall*, with him *Geo. T. Butler* and *Frederick J. Geiger*, for appellants.—The agreement cannot be varied by the testimony that was produced. While no one doubts the testimony it is insufficient: Thomas & Sons v. Loose, Seaman & Co., 114 Pa. 35; Jackson v. Payne, 114 Pa. 67; VanVoorhis v. Rea Bros. & Co., 153 Pa. 22.

Where one of two innocent persons is to suffer from the tortuous act of a third, he who gave the aggressor the means of doing the wrong must alone bear the consequences of the act: Bank of Kentucky v. Schuylkill Bank, 1 Parsons, 248; Penna. R. R. Co.'s App., 86 Pa. 80; Hutchinson v. Gill, 91 Pa. 253.

One who seeks to rescind a contract must first restore what he has received thereunder: Guilinger v. Zahniser, 5 Cent. Rep. 303.

*V. Gilpin Robinson* and *A. Lewis Smith*, for appellees.

PER CURIAM, February 28, 1898:

The decree in this case is affirmed upon the findings of fact and conclusions of law contained in the opinion of the learned court below.